IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MARK DONISI,<br><br>    Defendant. | No. CR06-3055-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

_____

The defendant Mark Donisi is charged with five counts of drug, firearms, and money laundering violations. (*See* Doc. No. 17, Superseding Indictment) Donisi has filed a motion to suppress evidence (Doc. No. 28), arguing a federal search warrant for a search of his residence was issued without probable cause. The parties have stipulated that Donisi's motion may be decided by the court based on the four corners of the search warrant application, and no evidentiary hearing is necessary. (*See* Doc. No. 26) The plaintiff (the "Government") has resisted Donisi's motion (Doc. No. 28). The Government has filed, under seal, a complete copy of the search warrant application at issue. (Doc. No. 31)

The search warrant in question was issued by Chief Magistrate Judge John A. Jarvey on August 1, 2006. The warrant provided for a search of Donisi's residence, garage, machine shed, and other outbuildings, for contraband, including drugs, paraphernalia, drug notes, drug production materials, and other items. *See id.* The application for search warrant was supported by the affidavit of Gregory Brugman, a Special Agent with the Iowa Division of Narcotics Enforcement assigned to the DEA Task Force. In the affidavit, Brugman stated a cooperating individual ("CI") had debriefed with law enforcement on June 29 and 30, 2006, and had provided detailed information about Donisi's marijuana growing operation at Donisi's residence. According to Officer

Brugman, the CI stated Donisi was a teacher in either Rockwell or Mason City, and Donisi had been the CI's source of supply for marijuana since sometime in 2004.

The CI described a growing operation in which Donisi would cultivate marijuana plants in a hydroponics laboratory in his basement until the plants were viable enough to move outdoors. Donisi then would transplant the marijuana plants into a cornfield behind his house. The CI described how Donisi irrigated the marijuana plants using linked garden hoses that were connected to Donisi's house. Once the plants ripened, Donisi would cut them down and dry them in his machine shed. The CI stated he had assisted Donisi in processing and packaging the marijuana for sale.

Among other things, the CI stated the cornfield in which Donisi had grown his marijuana plants was behind Donisi's house. However, in July 2006, when the CI provided officers with the property's exact address, the CI stated the field now contained soybeans and the CI did not know the current location of the marijuana field.

To corroborate the CI's information, officers determined that Donisi was listed as the owner of the residence where the CI said the marijuana operation was located. Officers learned Donisi formerly was a school teacher in Mason City, Iowa. They also learned that another individual named by the CI as being involved in the marijuana growing operation was the brother of another individual who had been prosecuted in this court for conspiracy to distribute marijuana and possession with intent to distribute marijuana.

In Officer Brugman's affidavit, he described how officers conducted surveillance of farm fields surrounding Donisi's property. They noted a soybean field was behind Donisi's property, but they observed that a cornfield was directly across from Donisi's property. Officers located a footpath into the cornfield that began at the end of the field directly across from Donisi's property. They obtained permission to inspect the cornfield from the farmer who owned the cornfield. In the cornfield, near the footpath, the officers
2

found 300 to 400 feet of linked garden hose running along a furrow in the field, beginning at the edge of the field closest to Donisi's property. The officers followed the hose into the cornfield, where they located five rows containing 250 to 300 marijuana plants, each three to four feet tall.

Officer Brugman went on to describe his training, experience, and knowledge of common practices among drug manufacturers and dealers, including methods used to distribute drugs and to deal with monies obtained from drug sales. (*Id.*)

Donisi argues that although Officer Brugman's affidavit contains a significant amount of detail, it does not provide probable cause for issuance of the search warrant. Donisi relies on discrepancies between information provided by the CI and what officers found when they attempted to corroborate the CI's information. Donisi notes the CI stated Donisi had a marijuana growing operation "on his property"; Donisi planted the marijuana plants in a cornfield "behind Donisi's house"; and a series of garden hoses ran from Donisi's house into the cornfield to irrigate the marijuana plants. Instead, officers found a soybean field behind Donisi's house, no linked garden hoses running to Donisi's property, and no marijuana growing operation on Donisi's property. Donisi further notes that as of July 2006, when the CI gave officers the specific address of Donisi's property, the CI told officers there now was no cornfield behind Donisi's property and the CI was unsure where the marijuana growing operation was located.

Donisi argues the officers should have attempted to determine whether any cornfield ever had been located behind his house. He notes none of his neighbors ever reported suspicious activities around his property or had observed a hose running from his property across the road to the neighbor's cornfield. He also notes the affidavit contains no historical information regarding cornfields behind his home, or even that he actually lived at the Rockwell, Iowa, residence during the summer of 2006. Instead, the affidavit indicates Donisi also had a residence in Wisconsin.

3

Donisi argues any information provided by the CI was stale and could not provide probable cause for issuance of the search warrant. (*See* Doc. No. 24-2, p. 4, citing *United States v. Kennedy*, 427 F.3d 1136, 1141-42 (8th Cir. 2005)) Donisi further argues the affidavit was "'so lacking in indicia of probable cause as to render official belief in [its] existence entirely unreasonable,'" and therefore, the officers could not rely reasonably on the invalid search warrant to justify the search. (*Id.*, pp. 4-5, quoting *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 92 L. Ed. 2d 677 (1984)).

The United States Supreme Court has set the standard for review of a search warrant application, as follows:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Spinelli [v. United States,]* 309 U.S. [410,] 419, 89 S. Ct. [1509,] 590[, 21 L. Ed. 2d 637 (1969)]. "A grudging or negative attitude by reviewing courts toward warrants," *[United States v.] Ventresca*, 380 U.S. [102,] 108, 85 S. Ct. [741,] 745, [13 L. Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant [and] "courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, [380 U.S.] at 109, 85 S. Ct. at 746.
>
> . . . . Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960). *See United States v. Harris*, 403 U.S. 573, 577-583, 91 S. Ct. 2075, 2079-2082, 29 L. Ed. 2d 723 (1971). [FN10]

> [FN10] We also have said that "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," *Ventresca*, *supra*, 380 U.S. at 109, 85 S. Ct. at 746. This reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.

*Illinois v. Gates*, 462 U.S. 213, 236-37 & n.10, 103 S. Ct. 2317 & n.10, 2331, 76 L. Ed. 2d 527 (1983).

Thus, the scope of this court's review of the search warrant in this case is limited to a determination of whether the magistrate had a "substantial basis" to issue the warrant. In conducting this review, the court is mindful that

> affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law have no proper place in this area." *Ventresca, supra*, 380 U.S. at 108, 85 S. Ct. at 745. . . . [M]any warrants are – quite properly . . . issued on the basis of nontechnical, common-sense judgment of laymen applying a standard less demanding than those used in more formal legal proceedings.

*Gates*, 462 U.S. at 235-36, 103 S. Ct. at 2331. As the Supreme Court further explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that

5

> probable cause existed. *Jones v. United States,* 362 U.S. [257,] 271, 80 S. Ct. [725,] 736[, 4 L. Ed. 2d 697 (1960)]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does [the prior legal standard].

*Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332. *See also United States v. Fulgham*, 143 F.3d 399, 400-01 (8th Cir. 1998) ("When we review the sufficiency of an affidavit supporting a search warrant, great deference is accorded the issuing judicial officer. *See United States v. Day*, 949 F.2d 973, 977 (8th Cir. 1991).").

Applying this deferential standard, the undersigned concludes Judge Jarvey had an ample reasonable basis to conclude a fair probability existed that contraband would be found on Donisi's property. The discrepancies between the CI's information and what the officers actually observed were minor in comparison to the information the officers corroborated. The residence address provided by the CI was confirmed to be Donisi's property. There was a cornfield directly across from the property that contained several hundred marijuana plants, irrigated by linked garden hoses, and this growing operation was identical in form, if not in exact location, to the growing operation described by the CI. The officers further had confirmed that Donisi formerly was a school teacher, another identifying fact provided by the CI. These facts were sufficient to provide probable cause for a search of Donisi's property.

The court further finds that even if the warrant affidavit did not contain sufficient facts to support a finding of probable cause, the officers reasonably and in good faith relied on the warrant. The officers had reasonable grounds to believe the warrant was issued properly, and they "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Leon*, 468 U.S. at 918, 104 S. Ct. at 3418.

For these reasons, the undersigned respectfully recommends Donisi's motion to suppress be denied. Objections to this recommendation must be filed by **November 3, 2006**. Responses to objections, if any, must be filed by **November 7, 2006**.

**IT IS SO ORDERED.**

**DATED** this 27th day of October, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT